UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**MILLENNIUM PIPELINE COMPANY, L.L.C.,**

                                   *Plaintiff,*

                    -vs-

**CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (No Number) EAST SIDE OF
STATE HIGHWAY 94 & 17A, S.B.L. No. 31-2-
64.32 AND (No Number) WEST SIDE OF STATE
HIGHWAY 94 & 17A, S.B.L. No. 31-2-66.2, TOWN
OF WARWICK, COUNTY OF ORANGE, NEW
YORK, John W. Sanford, III, John Doe, et al., and
Unknown Owners,**

                                   *Defendants.*

**AFFIDAVIT OF MARK D.
LANSING IN SUPPORT OF
PLAINTIFF'S MOTION FOR A
PRELIMARY INJUNCTION**

Civil Action No.
**07 CIV 7646**

**Hon. Kenneth M. Karas**

---

| | |
|---|---|
| **STATE OF NEW YORK** | ) |
| | ) SS: |
| **COUNTY OF ALBANY** | ) |

**MARK D. LANSING**, being duly sworn, deposes and says:

1.       I am an attorney duly licensed to practice law before the courts of the State of
New York and the United States District Courts for the Southern District of New York. I am a
member of the law firm of Hiscock & Barclay, LLP, attorneys for Plaintiff Millennium Pipeline
Company, L.L.C. ("Millennium"). I am fully familiar with the facts and circumstances of this
action and the statements made herein. The bases for statements made upon information and
belief are my review of certain of Millennium's books and records and my discussions with
representatives of Millennium.

2.       I submit this Affidavit in support of Millennium's motion for an injunction,
pursuant to Federal Rules of Civil Procedure ("FRCP") 65(a), permitting Millennium to

immediately enter upon certain real property identified more fully below, as located within the District, and enjoining the owner of such property and all other Defendants from interfering with such entry.

3.  As stated more fully in Millennium's accompanying Memorandum of Law, Millennium is the "holder of a certificate of public convenience and necessity," issued by the Federal Energy Regulatory Commission ("FERC") pursuant to §7(c) of the Natural Gas Act ("NGA"), 15 USC §717f(c) ("NGA"), and thereby possesses the power of eminent domain pursuant to §7f(h) of the NGA, 15 USC §717f(h).

4.  Millennium seeks to construct a natural gas pipeline measuring approximately 182 miles long and associated facilities, beginning at a new compressor station in Corning, New York, traversing 1,478± properties in the southern tier of New York through the counties of Steuben, Chemung, Tioga, Broome, Delaware, Sullivan, Orange and Rockland, and terminating at the existing Ramapo measuring and regulating station in Ramapo, New York (the "Project"). A majority of the Millennium pipeline will be located within or along the right-of-way of Columbia Gas Transmission Corporation's ("Columbia") existing Line A-5 pipeline, which the Millennium pipeline will replace.

5.  By the underlying condemnation action, Millennium seeks to acquire permanent and temporary easements in the following property owned by Defendant John W. Sanford, III, in furtherance of the Project: (No Number) East Side of State Highway 94 & 17A, Town of Warwick, County of Orange, New York, S.B.L. No. 31-2-64.32 and (No Number) West Side of State Highway 94 & 17A, Town of Warwick, County of Orange, New York, S.B.L. No. 31-2-66.2 (collectively, the "Property").

6. There is an **existing pipeline**, pursuant to existing easements, located on the Property at issue in this action. Millennium has minimized impact to the Property by locating much of the proposed pipeline in the same location as the existing pipeline that it will replace. *See* tract maps attached as Exhibits 2-5 to the Complaint. At the time of pipeline construction, Millennium intends to remove the existing pipeline from the Property, leaving only the new pipeline remaining thereat.

7. Millennium commenced this eminent domain action pursuant to FRCP 71A for an Order of Condemnation vesting Millennium with permanent and temporary easements in the Property to enable Millennium to, *inter alia*, construct the proposed pipeline in furtherance of the Project. FRCP 71A does not authorize Millennium to enter upon the Property until this Court determines the value of the damages to the Property as caused by the easements. However, this Court possesses the discretion and power, pursuant to FRCP 65(a), to grant an Order providing Millennium with the right to immediately enter the Property to effectuate the Project. *See* Millennium's Memorandum of Law, Point II. For the reasons that follow, the Court should grant Millennium's motion.

## The FERC Has Issued an Order Approving the Project

8. On December 21, 2006, the FERC issued an Order amending the Certificate of Public Convenience and Necessity it had previously issued to Millennium in 2002 to construct and operate an earlier version of the Project (the "2006 FERC Order" or "Certificate"). A copy of the 2006 FERC Order is attached to Millennium's Complaint as Exhibit 1.

9. In issuing the 2006 FERC Order and approving the revised Project, the FERC determined the Project will serve the public convenience and necessity, as follows:

- By providing the northeast with access to gas supplies from hubs in Ontario, Canada and Chicago, Illinois;

- By increasing pipeline capacity in southeastern New York;

- By providing access to natural gas storage fields located in Western New York; and

- By addressing increased demands for natural gas in the New York City area, as required by the increasing demands of electric generating plants that are fueled primarily by natural gas. In this regard, the FERC also recognized that gas demand in the New York City metropolitan area is close to exceeding the capacity of the pipelines serving it and that market studies continue to indicate a growing demand for natural gas in such area.

Complaint, Exhibit 1, pp. 29-30.

10.    The Certificate also includes a detailed analysis of the Project's proposed route and alternate routes, which includes crossing the Property. Millennium submitted alignment sheets showing the route of the proposed pipeline through the Property, and the FERC fully considered, evaluated and approved the proposed pipeline's crossing of the Property.

11.    On January 19, 2007, Millennium accepted the 2006 FERC Order.

**Millennium's Complaint is Valid in All respects and Should be Granted**

12.    The Complaint clearly sets forth the authority for the taking, the use for which the permanent and temporary easements in the Property are to be taken, the identity of the Property and the persons with an interest in those portions of the Property sought to be acquired as easements, and the Complaint otherwise complies with the FRCP 71A(c)'s pleading requirements and all other requirements in all respects.

13.    Moreover and as previously stated, Millennium is properly proceeding before this Court pursuant to the NGA as a valid condemnor because it is a holder of the 2006 FERC Order.

**Millennium will Suffer Irreparable Harm if it is not Permitted to Immediately Enter Upon the Property and the Balance of the Hardships Tips Decidedly in Millennium's Favor**

14.     The granting of Millennium's Complaint will not, by itself, provide Millennium with the right to immediately enter the Property. Rather, FRCP 71A provides for a bifurcated process whereby the Court first makes a determination over the sufficiency of the Complaint and then makes a determination over the award of just compensation to be paid to the property owner and any other persons with an interest in the property to be acquired. The condemnor may enter upon the property following the condemnor's payment of the Court-determined just compensation.

15.     Many important public projects, like Millennium's instant Project, however, are complex, involving many parcels of land, which would not be capable of being developed unless the condemnor were permitted to immediately enter upon the property. For this reason, a body of law has developed whereby the district courts have exercised their inherent equitable powers to authorize condemnors proceeding according to the NGA to immediately enter upon private property, pursuant to the injunction provisions of FRCP 65(a), for pipeline construction. This law is analyzed in Millennium's accompanying Memorandum of Law.

16.     One property owner, by denying access to his or her land, could delay construction of the entire pipeline. The proposed Millennium pipeline measures approximately 182 miles long and shall extend through 1,478+/- properties located in eight counties across the southern tier of New York State. Notwithstanding the magnitude of the Project, the 2006 FERC Order provides that Millennium shall complete construction of the pipeline and have it in service by December 21, 2009. Complaint, Exhibit 1, p. 105.

17.     Millennium plans to be in service by November 2008. In order to meet this deadline, and maintain uninterrupted service to the thousands of customers currently serviced by

the existing Columbia Line A-5 pipeline that the Millennium pipeline will replace, Millennium must sequence construction over the next two years, including the construction of a portion of the pipeline later this year. Indeed, construction must commence well before just compensation determinations are concluded by the Court in order to meet Millennium's proposed in-service date and any delays or the inability to sequence construction will occasion great additional expense to Millennium and would undermine the Project and its important FERC-determined public purposes by jeopardizing Millennium's ability to timely complete it.

18.    In consideration of the sheer size of the Project and the requirement that all construction be completed by December 31, 2009, by definition, Millennium's inability to access properties according to its prerogative and schedule to commence and complete pre-construction and/or construction activities will result in irreparable harm to Millennium and the public at large in the event Millennium is unable to timely compete this massive Project. *See* Millennium's Memorandum of Law, Point II(B).

19.    The construction of a pipeline the size of Millennium's proposed pipeline, which shall extend through almost 1,500 parcels over 182 miles, requires an enormous amount of coordination, organization and planning. Such construction is performed in an assembly-line fashion, where the construction crews methodically move along the route of the pipeline. One property owner, by denying access to his or her property, could delay construction of the entire pipeline, as it would be virtually impossible for Millennium and its contractors to skip properties along the 182 mile route and return to them at a later time. Millennium's ability to timely construct the pipeline will be gravely hindered – if not made to be impossible - in the event Millennium is required to skip construction at the Property and return to it next year (or later) following the Court's determination of just compensation.

20.    To maintain its construction schedule, Millennium is required to enter upon the Property commencing on or about October 1, 2007, to clear trees and otherwise clear the easement corridor and prepare it for pipeline construction, which is scheduled to commence in early 2008.

21.    With respect to the tree clearing, the FERC has ordered that Millennium conduct such work at the Property between October 1, 2007 and March 30, 2008. The FERC Order provides the following at condition 27 (p. 119):

> Millennium shall conduct tree clearing during the period of October 1 to March 30, to minimize the adverse affects on the Indiana bat in the areas of known bat activity, between MPs 346 and 363. Future maintenance activities that involve tree removal, pruning, or similar activities, shall be scheduled to occur between October 1 and March 30 to avoid disturbing roosting bats. Millennium shall employ the services of a qualified bat scientist to investigate trees and/or conduct other surveys as may be recommended by the FWS [US Fish and Wildlife] for the presence of Indiana bats if the removal of a limited number of trees is necessary between April 1 and September 30, to avoid a take of bats.

The Property is located within the area affected by this condition. The FERC Order is attached to Millennium's Complaint at Exhibit 1.

22.    Clearing the right-of-way is one of the first construction activities performed in constructing pipelines. As explained above, pipeline construction is a sequential - assembly line - type of activity. The typical sequence is that, once all permits and land rights have been obtained, the construction work area on the right-of-way is staked by surveyors. Once the limits of the construction area have been identified, the clearing operation can begin. Following clearing, the right-of-way is graded and the pipe ditch is dug. Pipe is strung along the edge of the ditch and welded. Once the pipe is welded into sections, it is lowered into the ditch. The ditch is then backfilled and restoration begins. The pipe is tested, typically using water to a

pressure higher than it will be subjected to when operating. Final restoration work follows once the pipe has been successfully tested.

23.    Several clearing crews will perform tree and brush clearing. Some portions of the Project have already been cleared in anticipation of installing approximately 12 miles of pipe in 2007. As noted above, approximately 17 miles of clearing will take place after October 1, 2007 to minimize the adverse affects to the Indiana bat, including clearing at the Sanford Property. The remaining right-of-way clearing will take place as part of the initial activity associated with the 2008 pipeline construction work, which is scheduled to start in the spring of 2008.

24.    On June 22, 2007, the FERC issued a Notice to Proceed relative to approximately twelve miles of pipe (which does not include the Property). Millennium began construction of such twelve miles of pipeline on June 22, 2007, as soon as Millennium received the FERC Notice to Proceed. Construction in 2007 has been limited to pipe availability, issuance of the June 22, 2007 FERC Notice to Proceed, and the need to maintain gas supplies to existing markets. Millennium intends to construct the remainder of the pipeline, including at the Sanford Property, in 2008. However, Millennium must commence tree and brush clearing at the Property (and at 220 other properties) by October 1, 2007 in order to be prepared to commence actual pipeline construction next year.

25.    There are approximately 170 miles of pipeline that will be constructed in 2008. The construction is broken up into five different segments or spreads. There will be multiple construction crews working on different segments at the same time in 2008. In some cases, different segments can be worked on at the same time. In other segments, one segment will have to wait until another segment is complete in order to maintain gas service to the markets.

26.    Millennium is relying on the ability to immediately enter the Property to facilitate pipeline construction in a safe, timely and cost-efficient manner, in accordance with a schedule that will maintain uninterrupted gas service to the existing Line A-5 customers. Millennium's ability to immediately enter the Property is critically important to ensuring that construction is timely completed, and the owner of the Property and the other Defendants will be protected by the security that Millennium will post in amounts to be determined by the Court.

27.    The construction time period on the Millennium Project is limited to several factors, two of the biggest being, (i) maintaining gas supplies to existing markets as the pipeline is constructed and, (ii) complying with environmental construction timing windows that have been imposed on the Project.

28.    For the most part, the Millennium is using an existing and active pipeline right-of-way to construct its facilities. The pipeline that is being replaced is also being used to serve existing local distribution companies like Orange and Rockland Utilities, Inc. In order to maintain gas service, only one section of piping can be taken out at a time. The time period when these sections can be taken out is usually in the late spring, summer, and fall, when the winter heating demand for natural gas is lower.

29.    In addition to market restrictions, there are also environmental timing windows imposed on the Project to protect sensitive land features or endangered species. In particular, Millennium is required by the New York Department of Environmental Conservation to minimize the possibility of construction interfering with fish migration and spawning. As a result, Millennium is limited to performing in-stream construction in coldwater fisheries between June 1 to September 30, and coolwater and warmwater fisheries considered significant by the state, between June 1 and November 30, unless other timing windows are permitted by federal or

state agencies. These restrictions further emphasize why Millennium must be permitted to enter upon properties, like the Sanford Property, according to its schedule – not the Defendants' schedules.

30.    In addition, Millennium is required to comply with permit conditions and requirements from several agencies including FERC, U.S. Army Corps of Engineers, U.S. Fish and Wildlife, New York State Historic Preservation Office, and New York Department of Environmental Conservation. All the conditions and requirements imposed on the Project by these agencies must be factored into the construction schedule and construction sequence.

31.    As demonstrated above, there are a myriad of issues and factors that must be accounted for and complicate any pipeline construction project, let alone the instant 182 mile pipeline that must cross almost 1,500 parcels. Accordingly, that the proposed schedules applicable to the Property could change and, by necessity, Millennium seeks to exercise its temporary easement rights at every property, including the Sanford Property, for several years through the completion of Project construction. In this regard, one property owner cannot be permitted to "hold up" the entire process or make it less efficient by denying access to its land, which could adversely affect the entire Project.

32.    For the reasons stated above, by the instant motion Millennium simply seeks to move up the acquisition of the easements in the Property that are the object of the underlying action, which acquisition is expressly authorized by the FERC's delegation of the power of eminent domain to Millennium through the Natural Gas Act. *See* Memorandum of Law, Point I.

**Millennium Has Negotiated with the Owner of the Subject Property in Good Faith**

33.    Since approximately April 2005 and continuing through the filing of the Complaint, Millennium has negotiated in good faith with Defendant John W. Sanford, III to

attempt to purchase the required easements from him. These efforts have included the following: (i) multiple telephone conferences with the Defendant Sanford and his attorney, Robert Krahulik to explain the Project, its location and its impact on the Property; (ii) multiple in-person meetings with Defendant Sanford; (iii) Millennium mailed Defendant Sanford proposed easement agreements and maps showing the locations of the required easements; and (v) Millennium made offers to purchase such easements, including its most recent offer made on July 30, 2007 which was for an amount considerably in excess of Millennium's appraised value.

34.    Millennium will deposit funds with the Court in amounts determined by the Court for the benefit of the owner of the Property and anyone else that possesses an interest in those portions of the Property to be burdened by the easements. Millennium has retained outside appraisal consultants, and while they have not yet prepared a formal appraisal of the Property, they have determined the potential damages to the Property as a result of the necessary easements to be $71,000.

35.    The balance of the equities tips decidedly in Millennium's favor because the law is well settled that a property owner is fully protected where the condemnor deposits funds prior to immediately entering his or her property in an amount determined by the court. *See* Memorandum of Law, Point II(B)(3).

## MILLENNIUM HAS PREVIOUSLY RECEIVED ORDERS AUTHORIZING IT TO IMMEDIATELY ENTER UPON OTHER PROPERTIES ALONG THE ROUTE OF THE PROPOSED PIPELINE

36.    To date, Millennium has commenced two actions in the United States District Court for Southern District of New York for the purpose of acquiring easements in six properties for the Project. In the first action, commenced in March 2007, Millennium obtained an Order in May 2007

permitting Millennium to immediately enter upon the property at issue in that case for the purpose of constructing an access road approximately 3,000 feet long. This action is known as 07 CV 2491.

37.    The second federal court action involves five separate properties and, since Millennium commenced such action in June 2007, Millennium has either entered into easement agreements or obtained Court Orders permitting it immediate access onto each of the five properties in order to begin construction of the pipeline and pre-construction tree-clearing. This action is known as 07 CV 5815.

38.    As demonstrated above and in Millennium's accompanying papers, this important public Project, which has been approved by the FERC, is well under way and Millennium requires access to the Sanford Property by October 1, 2007 to commence pre-construction work, namely tree and brush clearing within the proposed easement corridor. Millennium will then thereafter seek to enter the Property to construct the pipeline, and construction at the Property is scheduled to commence in 2008.

39.    Millennium is merely seeking the right to move up its ability to enter upon the Property to ensure that the pipeline, which measures approximately 182 miles long, is timely and safely constructed. Millennium will fully protect the owner of the Property and the other Defendant by posting security in an amount to be determined by the Court, but which Millennium submits should be in the amount of $71,000, which is the amount determined by Millennium's real property appraisal consultants.

**WHEREFORE,** deponent respectfully prays for this Court to grant an Order authorizing Millennium to immediately enter upon the Property for all purposes related to the construction of the pipeline; enjoining Defendants and their employees, agents, contractors and all other

representatives from interfering with such entry; and granting to Millennium such other and

further relief as the Court deems fair and proper.

MARK D. LANSING
Bar/Roll No. MDL1947

Subscribed and sworn to before me
this 6th day of September, 2007.

Notary Public

SHARON R. MADDALLA
Notary Public, State of New York
No. 01MA6117905
Qualified in Rensselaer County
Commission Expires Nov. 1, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**MILLENNIUM PIPELINE COMPANY, L.L.C.,**

*Plaintiff,*

-vs-

**CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (No Number) EAST SIDE OF
STATE HIGHWAY 94 & 17A, S.B.L. No. 31-2-64.32
AND (No Number) WEST SIDE OF STATE
HIGHWAY 94 & 17A, S.B.L. No. 31-2-66.2, TOWN
OF WARWICK, COUNTY OF ORANGE, NEW
YORK, John W. Sanford, III, John Doe, et al., and
Unknown Owners,**

*Defendants.*

**PLAINTIFF'S
MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION
FOR A PRELIMINARY
INJUNCTION**

Civil Action No. **07 CIV 7646**

**Hon. Kenneth M. Karas**

---

## PRELIMINARY STATEMENT

Plaintiff/condemnor Millennium Pipeline Company, L.L.C. ("Millennium") submits this memorandum of law in support of its motion for a preliminary injunction pursuant to Federal Rules of Civil Procedure ("FRCP") 65(a), authorizing it to immediately enter upon the real property owned by Defendant John W. Sanford, III located in the Town of Warwick, County of Orange, at (No Number) East Side of State Highway 94 & 17A, S.B.L. No. 31-2-64.32 and (No Number) West Side of State Highway 94 & 17A, S.B.L. No. 31-2-66.2 (collectively, the "Property") for the purpose of commencing construction of a natural gas pipeline to effectuate a public project approved by the Federal Energy Regulatory Commission ("FERC").

There is an **existing pipeline**, pursuant to existing easements, located at the Property, and Millennium's proposed pipeline will replace most of it. This Court should

grant the motion because Millennium possesses the power of eminent domain and has filed a Complaint[1] to acquire easements required to construct the pipeline, which is pending in this Court, is valid in all respects and in which there is a likelihood of success on the merits; Millennium has no adequate remedy at law; Millennium will suffer irreparable harm in the event the motion is not granted; the balance of the equities lie with Millennium; and, prior to entry onto the Property, Millennium will post a bond with the Court in an amount to be determined by the Court.

## STATEMENT OF FACTS

Millennium seeks to construct an approximate 182-mile long natural gas pipeline beginning at a new compressor station in Corning, New York, traversing the southern tier of New York through the counties of Steuben, Chemung, Tioga, Broome, Delaware, Sullivan, Orange and Rockland, and terminating at the Ramapo measuring and regulating station in Ramapo, New York (the "Project"). A majority of the Millennium pipeline will be located within or along the right-of-way of Columbia Gas Transmission Corporation's ("Columbia") existing Line A-5 pipeline, which the Millennium pipeline will replace. Affidavit of Mark D. Lansing, sworn to on September 6, 2007 ("Lansing Affidavit"), ¶4. On December 21, 2006, the FERC issued an Order amending the Certificate of Public Convenience and Necessity it had previously issued to Millennium in 2002 over an earlier version of the Project (the "2006 FERC Order" or "Certificate"). *Id.* ¶8. A copy of the 2006 FERC Order is attached to Millennium's Complaint as Exhibit 1.

For the past few years and continuing through the filing of the Complaint, Millennium has negotiated in good faith with the owner of the Property, Defendant John

---

[1] Jurisdiction is conferred on this Court by 15 U.S.C. §717(f); 28 U.S.C. §1331; and FRCP 71A(a).

W. Sanford, III, to attempt to purchase the required easements from him. These efforts have included the following: (i) multiple telephone conferences with the Defendant Sanford and his attorney, Robert Krahulik to explain the Project, its location and its impact on the Property; (ii) multiple in-person meetings with Defendant Sanford; (iii) Millennium mailed Defendant Sanford proposed easement agreements and maps showing the locations of the required easements; and (v) Millennium made offers to purchase such easements, including its most recent offer made on July 30, 2007 which was for an amount considerably in excess of Millennium's appraised value. Lansing Affidavit, ¶33.

### ARGUMENT
### POINT I

### MILLENNIUM'S COMPLAINT
### SHOULD BE GRANTED

**A.     The FERC Possesses Jurisdiction Over the Project and Has Determined It Shall Serve the Public Convenience and Necessity**

The FERC has been delegated regulatory authority over the interstate sale and transportation of natural gas and natural gas companies engaged in such transactions, because Congress determined in the Natural Gas Act ("NGA") that

> the business of transporting and selling natural gas for ultimate distribution to the public is affected with a **public interest**, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate commerce is necessary in the **public interest**.

15 U.S.C. §717 (emphasis added).

In reviewing the instant Project to determine whether to issue the Certificate, the FERC fully reviewed all matters relevant to the public interest, in accordance with *Atlantic Ref. Co. v. Pub. Serv. Comm'n of N.Y.*, 360 U.S. 378 (1959). In this regard, and

pursuant to the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §4321-70f (2000), the FERC has promulgated extensive environmental review regulations for its use to evaluate the land use and potential environmental and siting impacts of proposed pipeline projects. 18 C.F.R. Part 380. The Certificate issued to Millennium in connection with the instant Project includes a detailed analysis of such matters, including, *inter alia*, the Project's route and alternative routes and its impact on the environment and persons along the approved route. *See* Complaint, Exhibit 1, *passim*.

The FERC determined the Project will serve the public convenience and necessity, as follows:

- By providing the northeast with access to gas supplies from hubs in Ontario, Canada and Chicago, Illinois;

- By increasing pipeline capacity in southeastern New York;

- By providing access to natural gas storage fields located in Western New York; and

- By addressing increased demands for natural gas in the New York City area, as required by the increasing demands of electric generating plants that are fueled primarily by natural gas. In this regard, the FERC also recognized that gas demand in the New York City metropolitan area is close to exceeding the capacity of the pipelines serving it and that market studies continue to indicate a growing demand for natural gas in such area.

*See* Complaint, Exhibit 1, pp. 29-30.

No one, including the Defendants herein, may challenge the FERC Certificate in the instant action before this Court. *Williams Natural Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990). *See also Hardy Storage Co., LLC v. An Easement to Construct, Operate and Maintain 12-Inch and 20-Inch Gas Transmission Pipelines Across Properties In Hardy County*, No. 06-7, 2006 WL 1004719, at *7 (N.D.W.V. Apr. 12, 2006) ("this Court does not have the power to look

beyond the Federal Energy Regulatory Commission's prior determinations, particularly with regard to the issue of whether the Plaintiff is empowered to seek lands by condemnation and the issue of whether the taking is for a public need.")

**B.    Millennium Possesses the Power of Eminent Domain and Its Complaint Complies with FRCP 71A**

As the holder of the FERC Certificate, Millennium possesses the power of eminent domain to acquire the permanent and temporary easements in the Property required for the Project. Millennium's authority is derived from the NGA, 15 U.S.C. §717-717w, which provides in pertinent part, as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipeline or pipelines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C.§717f(h).

The NGA is typical of federal statutes granting the power of eminent domain in that it does not prescribe the procedural methods or steps for exercising the power. FRCP 71A provides such a procedure and Millennium filed its Complaint in this action pursuant to FRCP 71A. *See United States v. 93.970 Acres Land,* 360 U.S. 328, 79 S. Ct. 1193, 1196 n. 7 (1959); *see also Southern Natural Gas Co. v. Cullman County,* 197 F.3d 1368 (11th Cir. 1999). The Complaint clearly sets forth the authority for the taking, the use for which the easements in the Property are to be taken, the identity of the Property and the

persons with an interest in those portions of the Property sought to be acquired as a permanent and temporary easements, and the Complaint otherwise complies with the Rule's pleading requirements [FRCP 71A(c)(1)-(2)] and all other requirements in all respects.

The Court should grant the Complaint because the FERC has issued the Certificate authorizing the Project, Millennium is vested with the power of eminent domain pursuant to the NGA and Millennium's Complaint complies with FRCP 71A in all respects.

### POINT II
### MILLENNIUM SHOULD BE
### PERMITTED TO IMMEDIATELY ENTER
### UPON THE PROPERTY

**A.    Millennium's Motion for Immediate Possession is Consistent with FRCP 71A.**

Millennium has filed the instant motion because the granting of its Complaint will not, by itself, provide Millennium with the right to immediately enter upon the Property. Rather, FRCP 71A provides for a bifurcated process whereby the district court first makes a determination over the sufficiency of the complaint and then makes a determination over the award of just compensation to be paid to the landowner and any other persons with an interest in the property to be acquired. The condemnor may enter upon such property following the condemnor's payment of the Court-determined just compensation. *See* FRCP 71A; *see also Kirby Forest Industries, Inc. v. United States*, 467 US 1, 6 (1984).

There are no provisions in FRCP 71A or the NGA that permit the condemnor to immediately enter private property prior to the Court's determination of just

compensation. However, many important public projects, like Millennium's instant Project, are complex, involving many parcels of land, which would not be capable of being developed unless the condemnor were permitted to immediately enter upon the property.[2] For this reason, a body of law has developed whereby the district courts have exercised their inherent equitable powers to authorize holders of certificates of public convenience and necessity to immediately enter upon private property for pipeline construction. FRCP 71A contains no language prohibiting a condemnor from pursuing available procedures to immediately enter upon private property prior to the entry of the final judgment over just compensation. Indeed, the Advisory Committee that drafted FRCP 71A was well aware of such procedures but decided against formally including them in FRCP 71A because "the procedure . . . being followed [to allow immediate possession] seems to be giving no trouble, and to draft a rule to fit all the statutes on the subject might create confusion." FRCP 71A Advisory Committee's Supplementary Report, 11 F.R.D., 222, 228 (March 1951).

**B.    Millennium Has Satisfied the Requirements for a Preliminary Injunction**

The Court in *East Tennessee Natural Company Co., v. Sage*, 361 F.3d 808 (4th Cir. 2004) analyzed the history and body of law that provides authority to Millennium to immediately enter upon the Property and held:

> [O]nce a district court determines that a gas company has the right to condemn property under the [Natural Gas Act], the Court may use its equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction.

*Id.*, 361 F.3d at 831.

---

[2] The instant Project involves the construction of an approximately 182 mile long pipeline across 1,478+/- properties through eight counties. Lansing Affidavit, ¶¶4, 16.

FRCP 71A is a special rule adopted in 1951 specifically for condemnation. It allows for the granting of preliminary injunctions pursuant to FRCP 65(a) because it provides that the regular rules of civil procedure, like FRCP 65(a), adopted with the original rules in 1937, apply to any subject not covered by the special rule. FRCP 71A(a).

Millennium has satisfied the first prong of the *Sage* test; i.e., Millennium has demonstrated that it possesses the power of eminent domain to acquire permanent and temporary easements in the Property for a public project approved by the FERC, and Millennium has filed the Complaint seeking to acquire such easements, which is valid in all respects. *See* Point I above. For the reasons set forth below, Millennium has satisfied the requirements for a preliminary injunction and its motion should be granted.

This Court recently restated that a party seeking a preliminary injunction must establish irreparable harm and **either** a likelihood of success on the merits **or** a balance of the hardships tipping decidedly in its favor. *Lusk v. Village of Cold Springs*, 418 F.Supp.2d 314, 318-319 (SDNY 2005) *citing Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992). Millennium satisfies both of these requirements.

### 1.  Millennium will Suffer Irreparable Harm if the Motion is not Granted

The construction of a pipeline the size of the Millennium's proposed pipeline, which shall extend through almost 1,500 parcels over 182 miles, requires an enormous amount of coordination, organization and planning. Such construction is performed in an assembly-line fashion, where the construction crews methodically move along the route of the pipeline. One property owner, by denying access to his or her property, could delay construction of the entire pipeline. The FERC Certificate provides that Millennium shall complete construction of the pipeline and have it in service by December 21, 2009,

although Millennium plans to be in service by November 2008. Lansing Affidavit, ¶¶16-26; Complaint, Exhibit 1, p. 105.

In order to meet this deadline, and maintain service to customers presently serviced by the existing Columbia Line A-5 pipeline that the Millennium pipeline will replace, Millennium must sequence construction over the next two years, including the construction of a portion of the pipeline later this year. Lansing Affidavit, ¶¶22-23. Indeed, construction must commence well before just compensation determinations are concluded by the Court in order to meet Millennium's proposed in-service date. Millennium's ability to timely construct the pipeline will be gravely hindered – if not made to be impossible - in the event Millennium is required to skip construction at the Property and return to them next year (or later) following the Court's determination of just compensation. The inability to sequence construction would likely undermine the Project and its important FERC-determined public purposes. Lansing Affidavit, *passim* beginning at ¶16.

Moreover, to maintain its construction schedule, Millennium is required to enter upon the Property commencing on or about October 1, 2007, to clear trees and otherwise clear the easement corridor and prepare it for pipeline construction, which is scheduled to commence in early 2008. With respect to the tree clearing, the FERC has ordered that Millennium conduct such work at the Property between October 1, 2007 and March 30, 2008. The FERC Order [Complaint, Exhibit 1] provides the following at condition 27 (p. 119):

> Millennium shall conduct tree clearing during the period of October 1 to March 30, to minimize the adverse affects on the Indiana bat in the areas of known bat activity, between MPs 346 and 363. Future maintenance activities that

> involve tree removal, pruning, or similar activities, shall be scheduled to occur between October 1 and March 30 to avoid disturbing roosting bats. Millennium shall employ the services of a qualified bat scientist to investigate trees and/or conduct other surveys as may be recommended by the FWS [US Fish and Wildlife] for the presence of Indiana bats if the removal of a limited number of trees is necessary between April 1 and September 30, to avoid a take of bats.

The Property is located within the area affected by this condition. Lansing Affidavit, ¶¶20-21.

In the following cases, condemnors proceeding according to the NGA, under circumstances similar to but less compelling than Millennium's, demonstrated they would suffer irreparable harm if their respective motions for immediate entry were not granted: *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 210 F.Supp.2d 976 (N.D. Ill. 2002); *East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth County, Virginia*, 2006 WL 1133874 (W.D. Va. Apr. 26, 2006); and *E. Tenn. Natural Gas Co., v. Sage*, 361 F.3d 808 (4th Cir. 2004).

In *Guardian*, the proposed pipeline corridor extended approximately 85 miles, from Joliet, Illinois to the Wisconsin border, and through four counties. *Guardian*, 210 F. Supp. 2d. at 977. In *Sage*, where the proposed gas pipeline measured approximately 94 miles in length, the Fourth Circuit aptly framed the issue and stated the basis for finding that the condemnor gas company would suffer irreparable harm by quoting the District Court below:

> [A]ny single parcel has the potential of holding up the entire project ... and to require ETNG [the condemnor] to build up to a parcel of land [it] does not possess, skip that parcel and then continue on the other side would prove wasteful and inefficient.

*Sage*, 361 F.3d at 829.

In *East Tennessee Natural Gas, LLC*, the proposed gas pipeline measured 32 miles in length and six property owners resisted the condemnor's motions for immediate possession. 2006 WL 1133874 at *2.

The pipelines in each of the cases cited above are dwarfed by the approximate 182 mile long Millennium pipeline.

Similarly, in *Northwest Pipeline Corporation v. The 20' x 1,430' Pipeline Easement*, 197 F.Supp.2d 1241 (E.D.Wash. 2002), the gas company sought to relocate a portion of an existing pipeline out of the public right of way in Barnes Road in the City of Spokane, Washington, and only a single parcel of private property would be impacted by the relocation. Irreparable harm was found to exist because the City of Spokane considered the improvement of Barnes Road to be vital to the improvement of the transportation infrastructure in the area. By way of comparison, the Millennium Project involves hundreds of properties (almost 1,500) and the Project's FERC-determined public purposes, designed to address natural gas shortages in the northeast and New York City area, are significantly more compelling than traffic congestion in the Barnes Road area of the City of Spokane. Indeed, *Sage* described the "need for natural gas" as a "substantial public interest" [361 F.3d at 826] and noted that the proposed pipeline, like the Millennium pipeline, "will make gas available for electric power generation plants." *Id.*, 361 F.3d at 830.

### 2. Millennium is Likely to Succeed on the Merits

Where, as here, Millennium requires easements in the Property for pipeline construction, the FERC has issued a Certificate and, by virtue of being a certificate holder, the NGA grants Millennium the power of eminent domain, "it is highly likely that

[Millennium] ultimately will succeed on the merits of the case." *East Tennessee Natural Gas, LLC*, WL 1133874 at *13; *See also Sage* at pp. 829-830.

### 3.   The Balance of the Hardships Tips Decidedly in Millennium's Favor

Millennium seeks to construct the pipeline according to a schedule that will maintain uninterrupted gas service to the existing Line A-5 customers while also achieving the FERC's goals of providing much needed gas supplies to the New York City area. While Millennium has demonstrated that it will be irreparably harmed and the public Project will likely be jeopardized in the event its motion is not granted, the Defendants herein will not be harmed.

A property owner is fully protected where the condemnor deposits funds prior to immediately entering his or her property in an amount determined by the court. *East Tennessee Natural Gas, LLC*, WL 1133874 at *12; *Sage*, 361 F.3d at 824; *Northern Border Pipeline Co. v. 127.79 Acres of Land*, 520 F.Supp. 170 (DND 1981). In *East Tennessee v. 1.28 Acres of Land*, the Court directed the condemnor to deposit funds in an amount based on purchase prices the condemnor recently paid for similar properties. Similarly, in *Sage*, the court found sufficient the condemnor's deposit of funds in an amount equal to the condemnor's appraised values of the easements to be condemned. *Id*, 361 F.3d at 824.

In *Northern Border Pipeline Co.*, the court granted the gas company's motion for immediate possession upon the condition that the condemnor deposit funds equal to the condemnor's estimate of just compensation plus additional funds or a bond equal to at least twice such estimate. The property owner and all persons with an interest in the property were permitted to apply to the Court for an order distributing the funds

deposited in the amount of the condemnor's estimate of just compensation, while the remaining deposited funds or bond were to be later disposed of and any deficiency or overpayment determined in accordance with the trial procedures of FRCP 71A(j).

Such deposit is also required by the injunction provisions of FRCP 65(c), which provide as follows:

> No . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully . . . restrained.

In accordance with FRCP 65(c) and the cases cited above, Millennium will deposit funds with the Court in an amount determined by the Court for the benefit of the Defendant John W. Sanford, III and anyone else that possesses an interest in those portions of the Property to be burdened by the easements. Millennium's appraiser has determined the potential damages to the Property as a result of such easements to be $71,000. Lansing Affidavit, ¶34.

The gas companies in *Sage* and *East Tennessee Natural Gas, LLC*, were directed to deposit funds in the amount of the appraisals (*Sage*) or similarly in the amount of purchase prices the gas company had made to other property owners to purchase easements in similar properties (*East Tennessee Natural Gas, LLC*). The condemnor was not required to deposit any premium. However, the court in *Northern Border Pipeline Co.* required that a premium be deposited. Accordingly, Millennium respectfully requests that its motion be granted upon its deposit of funds in the afore-mentioned amount determined by its appraiser and that no premium be required to be deposited. In the event the Court determines that Millennium is required to deposit funds in excess of

such appraised value. Millennium respectfully requests that such amount be no more than fifty percent of the appraised value.

In addition to the protections afforded the Defendants by the deposit, it is doubtful the Defendants can produce any evidence that they will suffer any additional harm other than the harm they will inevitably suffer as a result of the takings of easements in the Property, for which they will be justly compensated and, therefore, made whole. *See East Tennessee Natural Gas, LLC* WL 1133874 at *14. Similarly, in the extraordinarily unlikely event construction begins at the Property and the Project is abandoned, the Property could be restored sufficiently to its prior condition and damages could be awarded to the Defendants to compensate them for any Court-determined damages to the Property. *See USG Pipeline Co. v. 1.74 Acres of Land*, 1 F.Supp.2d 816, 826 (E.D. Tenn. 1998).

### 4. Millennium Has Negotiated With the Defendant Property Owner in Good Faith.

There is a split of authority among the district courts over whether the condemnor is required to negotiate in good faith with the property owner. *USG Pipeline Co.* recognizes such a requirement, based on the language of the NGA, which states that the holder of a FERC Certificate must exercise the power of eminent domain when it "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for [the necessary easements]." *USG Pipeline Co.*, 1 F.Supp.2d at 819, *quoting* 15 USC §717f (h).

The *USG* Court, however, appears to be reading a requirement into NGA §717f(h) that does not otherwise exist. In this regard, *East Tennessee Natural Gas, LLC* analyzed

FRCP 71A and the same language of NGA §717f(h) and came to the opposite conclusion:

> [N]othing in the act [i.e., the NGA] or Federal Rule of Civil Procedure 71A requires the condemnor to negotiate in good faith. All the act requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid.

*East Tennessee Natural Gas, LLC* at *10. *See also Kansas Pipeline Co. v. Land Located in Section 6, S.W. Quarter, Twp. 32S, Range 10W, County of Barber,* 210 F.Supp.2d 1253 (D. Kan. 2002).

In any event, as detailed in the Statement of Facts above and in the accompanying Lansing Affidavit, over the past few years, Millennium negotiated in good faith with the Defendant/property owner, John WE. Sanford, III, including explaining the Project and its location to Defendant Sanford and his attorney; negotiating to purchase the easements during multiple telephone conferences; in-person meetings with Defendant Sanford; and making purchase offers in amounts in excess of the appraised value of the Property's damages. Lansing Affidavit, ¶33.

## CONCLUSION

For the foregoing reasons, the Court should grant Millennium's motion for a preliminary injunction, authorizing it to immediately enter upon the Property for the purposes of timely and safely developing the Project, together with such other and further relief as the Court deems appropriate.

**DATED:**    September 6, 2007    **HISCOCK & BARCLAY, LLP**

By: _____
        Darryl J. Colosi DC2929
        Mark D. Lansing MDL1947

*Attorneys for Plaintiff*
Millennium Pipeline Company, L.L.C.
Office and Post Office Address
50 Beaver Street
Albany, New York  12207-2830
Telephone: (518) 434-2163