UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**MILLENNIUM PIPELINE COMPANY, L.L.C.**,

                *Plaintiff*,

-vs-

**CERTAIN PERMANENT AND TEMPORARY EASEMENTS IN (No Number) EAST SIDE OF STATE HIGHWAY 94 & 17A, S.B.L. No. 31-2-64.32 AND (No Number) WEST SIDE OF STATE HIGHWAY 94 & 17A, S.B.L. No. 31-2-66.2, TOWN OF WARWICK, COUNTY OF ORANGE, NEW YORK, John W. Sanford, III, John Doe, et al., and Unknown Owners**,

                *Defendants*.

Civil Action No.
07-CIV- 7646

Hon. Kenneth M. Karas

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

---

### PRELIMINARY STATEMENT

Plaintiff/condemnor Millennium Pipeline Company, L.L.C. ("Millennium") submits this reply memorandum of law in further support of Millennium's motion for a preliminary injunction, pursuant to Federal Rules of Civil Procedure ("FRCP") 65(a), authorizing it to immediate possession of the real property owned by Mr. Sanford ("Sanford Property") for the purpose of commencing work associated with the construction of a natural gas pipeline, a public project approved by the Federal Energy Regulatory Commission ("FERC") (the "Project").[1]

---

[1] See Affidavit of Mark D. Lansing, dated September 24, 2007 ("September 24th Lansing Aff") for a complete description of the real property and applicable facts.

## ARGUMENT

## THE COURT SHOULD GRANT MILLENNIUM'S MOTION TO IMMEDIATELY ENTER UPON THE SANFORD PROPERTY

Mr. Sanford identified the following three reasons in opposing Millennium's request for immediate possession of easements over the Sanford Property: (1) that Millennium has not demonstrated irreparable harm; (2) that Mr. Sanford will suffer irreparable harm if Millennium is permitted to enter the Sanford Property; and (3) that Millennium has failed to adequately address Mr. Sanford's concerns regarding the pre-construction and construction work that Millennium seeks to perform at the Sanford Property. More specifically, Mr. Sanford alleges:

    a. Potential destruction of an electric fence (with potential loss of cattle);
    b. Potential loss of crop to feed livestock;
    c. A Real Estate Broker's estimate of $500,000 in "damages";
    d. Rejection that the purpose for coming onto the property is for clearing; or
    e. That the case is premature.

These reasons are factually and legally without merit. The Court should disregard them and grant Millennium the requested injunctive relief. Millennium addresses them below *in seriatim*.

### A.  Millennium Has Demonstrated Irreparable Harm

Mr. Sanford acknowledges and does not dispute that Millennium has the authority to condemn temporary and permanent easements over the Sanford Property. Affidavit of Robert E. Krahulik, sworn to September 20, 2007 ("Krahulik Affidavit"), ¶3. Thus, Mr. Sanford concedes that Millennium has a substantial likelihood of succeeding on the merits.

Instead, Mr. Sanford argues that Millennium has failed to establish irreparable harm, because the pipeline must be completed by December 31, 2009, and therefore, Millennium's requested immediate possession is a desired, rather than required, completion date of November 2008, arguing "Irreparable Harm and inconvenience are not synonymous [sic]." Krahulik

Affidavit ¶17. Sanford's parochial view misses the mark. The Sanford Property is one piece of a 182 mile pipeline Project that FERC has determined serves the public convenience and necessity. The needed clearing is limited by the FERC Order to be completed by March 31, 2008. However, over 220 parcels are required to be cleared by that date.

It is now axiomatic that pipeline company condemnors suffer irreparable harm when they are not permitted to immediately enter upon property to begin construction of a pipeline project that is subject to a FERC ordered deadline. The Project, here, dwarfs previous projects in which immediate possession was ordered. See *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 829 (4th Cir. 2004) (proposed gas pipeline measured approximately 94 miles in length); *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 977 (N.D. Ill. 2002) (proposed pipeline corridor extended approximately 85 miles, from Joliet, Illinois to the Wisconsin border, and through four counties); *East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth County, Virginia*, 2006 WL 1133874 (W.D. Va. Apr. 26, 2006) (proposed gas pipeline measured 32 miles in length and six property owners resisted the condemnor's motions for immediate possession). As the survey in *Sage* revealed, over eleven federal cases have granted the preliminary injunctive relief that Millennium seeks. *Sage*, at 361 F.3d 827-828.

The subject Project faces the same myriad of factors that Federal courts have uniformly held justify the issuance of the requested injunctive relief. *See* September 24th Lansing Aff at ¶¶ 9-21. Specifically, the court in *Sage* aptly framed the issue and stated the basis that a condemnor gas company would suffer irreparable harm, as follows:

> [A]ny single parcel has the potential of holding up the entire project … and to require ETNG [the condemnor] to build up to a parcel of land [it] does not possess, skip that parcel and then continue on the other side would prove wasteful and inefficient.

*Sage,* 361 F.3d at 829. That is, the pipeline company is entitled to complete discretion in sequencing the complex construction of a pipeline.

The sequencing of pipeline construction, and maintenance of that sequencing, is essential for timely and efficient construction of the pipeline and implementation of the FERC determined public need. One construction activity follows another in an assembly line type process, as follows:

1. Obtain necessary permits and land rights;
2. Stake construction work area on the right-of-way by surveyors;
3. Clear the property;[2]
4. After clearing, the right-of-way is graded and the pipe ditch is dug;
5. Pipe is strung along the edge of the ditch and welded;
6. Once welded into sections, the pipe is lowered into the ditch;
7. The ditch is backfilled and restoration begins;
8. The pipeline is tested, typically using water to a pressure higher than it will be subjected to when operating; and, then,
9. Final restoration work is completed.[3]

While, here, the entire pipeline must be fully installed, re-seeded and restored no later than December 2009, to meet winter natural gas demand and contractual obligations, the actual pipeline must be laid in the ground no later than November 1, 2008. Any disruption of the natural gas supply, in particular, for the winter season of 2008-09 will have self-evident catastrophic results. Accordingly, to effectuate this aggressive schedule, Millennium must be allowed to sequence the construction process. September 24th Lansing Aff, ¶11. That is, one

---

[2] Since the total length of the proposed Millennium pipeline is 182 miles, clearing must be performed by several clearing crews. Some portions of the Project have already been cleared in anticipation of installing about twelve miles of pipe in 2007. As noted above, approximately seventeen miles of clearing will take place between October 1, 2007 and March 31, 2008 to comply with the FERC's Order minimize the adverse affects to the Indiana bat. In this regard, Millennium must sequence and effectuate the clearing of about 220 parcels in that limited five month period, which also encapsulates winter.

[3] It is anticipated that final restoration will not be completed until 2009.

property owner, like Mr. Sanford, cannot be permitted to "hold up" the entire process or make it less efficient by denying access to his land.

In addition to sequencing issues, the construction time period for the Millennium Project is further limited by several factors, two of the biggest being: (i) maintaining gas supplies to existing markets as the pipeline is constructed and, (ii) complying with environmental construction timing windows that have been imposed on the Project. September 24th Lansing Aff, ¶14.

The pipeline being replaced presently serves existing local distribution companies (e.g., Orange and Rockland Utilities, Inc.). To maintain that gas service during the construction process, only one section of pipe can be taken out at a time. The optimum time period for replacing the sections is only late spring, summer, and fall, when the demand for natural gas is lowest. Thus, Millennium's construction schedule necessitates that the entire pipeline Project be in-service by November 1, 2008, in order to meet customer demands for the winter. September 24th Lansing Aff. ¶16.

In addition to market restrictions, Millennium must also comply with environmental timing windows to protect sensitive land features or endangered species,[4] which include permit conditions and requirements from several agencies including FERC, US Army Corps of Engineers, US. Fish and Wildlife, New York State Historic Preservation Office, and New York Department of Environmental Conservation. All the conditions and requirements imposed on

---

[4] Across the entire pipeline, Millennium must comply with New York Department of Environmental Conservation's requirement to minimize construction interference with fish migration and spawning. As a result, Millennium is limited to performing in-stream construction in coldwater fisheries between June 1 to September 30, and coolwater and warm water fisheries considered significant by the state, between June 1 and November 30. Needless to say, this further limits Millennium's ability to meet both the FERC's deadline and its contractual obligations to provide natural gas.

the Project by these agencies are factored into the construction schedule and sequence of the entire pipeline, not merely the Sanford Property.

In that regard, Mr. Sanford alleges that his Property is, in part, devoid of trees and is not part of the Indiana bat habitat. Mr. Sanford is incorrect. The Sanford Property is located within the area affected by FERC condition 27. September 24th 2007 Lansing Affidavit ¶18. Complaint, Exhibit 1, p. 119 (within "MPs 346 and 363"). Further, there are trees on the Sanford Property that require clearing for the Project. For example, trees exist where the Sanford Property is bisected by State Highway 94 & 17A. Such clearing must be completed between October 1, 2007 and March 31, 2008.

### 1. Mr. Sanford's Claim Regarding Livestock and Fencing are Lacking in Merit.

Mr. Sanford also alleges that his fencing and livestock will be harmed, somehow. While this issue relates solely to compensation, and thereby, does not constitute irreparable harm, as a matter of law, it lacks factual merit.

As Millennium previously assured Mr. Sanford, in accordance with environmental construction standards, it is required, when it is necessary to remove fences, to immediately install adequate temporary fences or gates. September 24th Lansing Aff, ¶22. In addition, temporary fencing will be installed along and/or across the construction area as necessary to protect livestock from construction activities. Alternative pasturing/feeding arrangements may also be made. Once construction is complete, permanent fence repairs are made. Millennium so advised Mr. Sanford. September 24th Lansing Aff ¶22. Mr. Sanford's concerns are unwarranted.

- 7 -

### B. Mr. Sanford Will Be Adequately Protected.

While Mr. Sanford argues that he will be irreparably harmed on the purported basis that Millennium will fail to adequately protect him for pre-construction and construction work that it seeks to perform at the Sanford Property, these contentions are without merit. However, even if true, they would not, as a matter of law, be grounds to deny Millennium's motion.

While, here, no demonstration has been made for the necessity of any security or bond, if the Court deems such to be appropriate, a property owner is fully protected where the condemnor deposits funds or obtains a bond prior to immediately entering his or her property. *East Tennessee Natural Gas, LLC*, WL 1133874 at *12; *Sage*, 361 F.3d at 824; *Northern Border Pipeline Co. v. 127.79 Acres of Land*, 520 F.Supp. 170 (DND 1981). If the Court determines a bond is appropriate, by the provision of such a bond, Mr. Sanford is fully protected.

While Mr. Sanford claims damages in the amount of $500,000, there is no support for his exaggerated projections. The "appraisal" submitted by Mr. Sanford is deficient. It fails to both value the Sanford Property at its established highest and best use and, more fundamentally, is wholly deficient. With all due respect to Ms. White (a real estate broker), she is not an appraiser.

The determination of highest and best use is critical to an appraiser's conclusion of value in an eminent domain proceeding. Highest and best use is that reasonably probable and legally alternative use which is physically possible, appropriately supported, financially feasible and which results in the highest present land value. The property owner is entitled to be compensated according to the market value of the property at its highest and best use. *Matter of NYC Franklin Record Ctr., Inc.*, 59 N.Y.2d 57, 61, 463 N.Y.S.2d 168, 169 (1983). It is the claimant's burden of proof to establish highest and best use which is grounded in reality,

particularly where the existing use of the property is other than its highest and best use. As the New York Court of Appeals has stated:

> While it is not essential to demonstrate either that the property had been used as its projected highest and best use or that there had been an <u>ante litem</u> plan for such use..., it is, of course, necessary to show that there is a reasonable probability that its asserted use could or would have been made **within the reasonably near future**... and a "use which is no more than a speculative or hypothetical arrangement in the mind of the claimant may not be accepted as the basis for an award". (Citations omitted).

*Matter of the City of New York (Broadway Cary Corp.)*, 34 N.Y.2d 535, 354 N.Y.S.2d 100, 101 (1974). Where the record evidence of plans for future improvements to the property are speculative, such evidence is insufficient to merit award for future damages. *See Southern Natural Gas Co. v. Land, Cullman Co.*, 197 F3d 1368 (11th Cir. 1999).

Here, Mr. Sanford emphasizes that the Sanford Property is and has been farmland for five generations. Affidavit of John W. Sanford, sworn to September 20, 2007 ("Sanford Affidavit"), ¶4. No evidence is submitted that the Sanford Property is intended to become a subdivision or that an application to subdivide has been filed for the Sanford Property.[5] To the contrary, Mr. Sanford specifically states that he is acquiring additional head of cattle to maintain his family's multi-generational farming operations. In addition, he also related that he recently spent $10,000 for an electric fence, that he assiduously claims cannot be violated for the protection of his livestock. Sanford Affidavit, ¶4. Simply, the Sanford Property is farmland, the valuation of potential damages for which, as a subdivision, is improper. September 24th Lansing Aff, ¶¶25-29.

---

[5] The appraisal submitted by Mr. Sanford also fails to note or take into account damages in light of the existing pipeline on the Sanford Property. Millennium has checked the Town of Warwick's record and found no application has been filed. September 24th Lansing Aff. ¶28.

Moreover, the alleged damages are wholly irrelevant. Mr. Sanford will be fully protected by either any security that this Court might order, or ultimately, by the compensation that this Court orders for the condemnation of the easements (if not otherwise agreed to by the parties).

In sum, Mr. Sanford's allegations do not constitute irreparable harm, but rather are compensation issues. Thus, Mr. Sanford's opposition must be rejected.

## CONCLUSION

For the foregoing reasons and as stated in Millennium's original motion papers, dated September 6, 2007, Millennium respectfully prays for this Court to grant an Order authorizing Millennium to enter upon the Sanford Property immediately upon the Court's determination of the amount of security that Millennium will be required to post in favor of Mr. Sanford; that Mr. Sanford and his employees, agents, contractors and all other representatives be enjoined from interfering with such entry; and granting to Millennium such other and further relief as the Court deems fair and proper.

**DATED:**     September 24, 2007

HISCOCK & BARCLAY, LLP

By: _____
Darryl J. Colosi DC2929
Mark D. Lansing ML1947
*Attorneys for Plaintiff*
Millennium Pipeline Company, L.L.C.
Office and Post Office Address
1100 M&T Center
Three Fountain Plaza
Buffalo, New York 14203-1414
Telephone: (716) 566-1553
Facsimile: (716) 846-1239
Electronic Mail: dcolosi@hiscockbarclay.com
Electronic Mail: mlansing@hiscockbarclay.com

Darryl J. Colosi
Mark D. Lansing
  *Of Counsel*